## London Assurance Corporation v. Bailey, et al.

## Yorkshire Insurance Company v. Jackson Roller Mill.

(Decided January 27, 1928.)

Appeals from Breathitt Circuit Court.

1.  Insurance.—Contracts to convey land and mill property to corporation to be formed inured to its benefit, and after its organization it became equitable owner of title to land and of mill property, and fire insurance policies issued to corporation were not void for breach of clause requiring insured to be unconditional owner of property and to have fee-simple title to land on which it was located.

2.  Insurance.—Where stockholder who had acquired all corporation's stock had corporation dissolved and conducted business under cer-

tain name and informed insurance agent, who attached to fire insurance policies running to corporation rider making them payable to business, on undisputed evidence that plaintiff suing on policies was owner of business, he was entitled to recover as against objection that corporation at time of issuance of policies was not unconditional owner of property and did not own fee-simple title to lot, especially in view of further showing that corporation had held equitable title to property and lot.

3. Insurance.—Where fire policies provided for their avoidance if subject of insurance was personal property and was incumbered by chattel mortgage, mortgages on insured property which included lot, building, and factory machinery which was' converted into realty by attachment, did not render policies unenforceable.

4. Appeal and Error.—In action on fire insurance policies, where peremptory instruction in favor of plaintiff would have been proper, alleged error in instructions to jury was immaterial.

H. H. HUFFAKER and A. H. PATTON for appellants.

O. H. POLLARD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On August 4, 1924, W. M. Bailey, one of the plaintiffs below and one of the appellees here, owned a vacant lot in Jackson, Ky., containing slightly more than one acre. At that time E. M. Russell, another plaintiff below and another appellee here, owned a flouring mill and machinery necessary to complete it, and which was located in Hazel Green, Wolfe county, Ky. The two concluded to organize a corporation and agreed that Russell should move his mill to Jackson and locate it on the vacant lot of Bailey and add thereto necessary machinery, which when done Bailey would deed his lot to the corporation. Other details of their agreement are unnecessary for the purposes of this case. On the day mentioned they embodied their agreement, as above briefly outlined, in a writing duly signed and executed by both of them, and later they formed the proposed corporation in which they each subscribed for 47½ per cent. of the stock, and their respective wives subscribed each for 2½ per cent. of the stock. The mill was equipped on the lot in Jackson pursuant to the contract, which described the lot, and which contained Bailey's obligation to convey it to the corporation, and on May 29, 1925, after the installation of the mill was completed as indicated, Bailey and Russell each executed a separate writing which they designated as a "bill of

sale." The one executed by Bailey (omitting signature) was in these words:

> "For full value received in stock of the corporation of the Jackson Roller Mills of Jackson, Kentucky, I hereby sell all my interests in building material and machinery and lot furnished and erected by me under contract with E. M. Russell. The building, machinery and lot and supplies are now owned and controlled by the Jackson Roller Mills, a corporation organized under the laws of Kentucky, and of which I own part of the stock."

And the one executed by Russell was thus worded:

> "For full value received in stock of the corporation of the Jackson Roller Mills, of Jackson, Kentucky, I hereby sell all my interests in building, material and machinery furnished and erected by me under contract with W. M. Bailey. The buildings, machinery and supplies are now owned and controlled by the Jackson Roller Mills, a corporation organized under the laws of Kentucky, and of which I own a part of the stock. Executed in duplicate."

It will observed that the two writings were in a large measure duplicated, with the exception that the consideration for the one Bailey executed was his contract with "E. N. Russell," while the one that Russell executed was his contract with "W. M. Bailey," and the writing signed by Bailey referred to the lot upon which the mill was constructed and which was omitted from Russell's writing. On July 22, 1925, and while matters stood as above indicated, and the mill was being operated in the corporate name of "Jackson Roller Mills," application was made to the agent of appellants and defendants below, London Assurance Corporation, and Yorkshire Insurance Company, for two separate fire insurance policies on the property of the corporation, and they were issued covering pro rata sums on designated articles of property not to exceed the total sum of $2,060 in each policy. Only a small amount of insurance was included on grain and other personal property. The great bulk of it covered the building and machinery therein, the latter of which had become fixtures because of its attachment to the realty.

Eight days after the delivery of the policies, and on July 30, 1925, Russell purchased all the stock in the corporation owned by his associates. Up to that time Bailey had not deeded the lot occupied by the mill to the corporation as he had agreed in the contract of August 4, 1925, except in so far as the bills of sale, supra, may have intended to do so, and on the day that Russell acquired all the stock Bailey and wife agreed to convey the lot to Russell as the sole owner of all the stock in the corporation. Pursuant thereto such deed was executed to Russell on August 3, 1925, and immediately thereafter, and on the same day, Russell and wife executed a mortgage to Bailey to secure the notes executed by the former to the latter in payment of the purchase price of his stock; but that mortgage covered only the building and fixtures therein and did not include any personal property not attached to the realty. Following that, and on August 20, 1925, Russell and wife executed another mortgage on the lot, improvements, machinery, and equipment to the First National Bank of Jackson, Ky., to secure an indebtedness of $5,000.

Prior to the removal of the machinery from Hazel Green, Russell had given a mortgage on it to Wolfe Company, at Chambersburg, Pa., but that debt, according to the undisputed proof, was paid before any of the transactions herein, and also before the moving of the machinery to Jackson. A mortgage was executed to Fairbanks-Morse & Co. on an oil engine, but it was not covered by the policies sued on but by a separate independent one. After Russell acquired all the stock of the corporation a meeting of its former stockholders was had and its dissolution was declared and a copy thereof was recorded with the county court clerk of Breathitt county, but what effect that action, or the execution of the bills of sale, had other than as an expression of the intention of the parties, we will not determine in this opinion.

The next day after Russell acquired all the stock the local agent of defendants at Jackson (one Dawkins), who was employed by J. M. Hoffman of Mt. Sterling, Ky., the latter of whom was the regular agent of defendants for the territory including Breathitt county, attached to each policy what is called in the record a "rider" sent to him by Hoffman, which said, inter alia; "This policy is amended to read 'Jackson Roller Mill' "—which was the

business name that Russell assumed after he acquired all the stock and after he obtained the conveyance of the title to the lot from Bailey and wife. With matters in, that condition the property was destroyed on November 4, 1925. After that Russell assigned his interests in the policy issued by defendant, London Assurance Corporation, to Bailey. The defendants declined to pay either of the policies, and these separate actions were filed in the Breathitt circuit court against them, the one by Bailey for the use and benefit of the insured against defendant London Assurance Corporation and the other by the insured against defendant Yorkshire Insurance Company to recover the respective amounts of the policies.

The answers denied the material averments of the petitions, and in separate paragraphs relied on certain provisions of the policy which it was alleged rendered it void and relieved defendant from all liability thereunder, which defenses were: (1) That the insured misrepresented the value of the property insured and concealed its true value contrary to a provision in the policy providing for its invalidity if such misrepresentations or concealments were made; (2) That one of the provisions of the policy was, "This entire policy, unless otherwise provided by agreement indorsed thereon or added hereto, shall be void . . . if the interest of the insured be other than sole and unconditional ownership; or if the subject of insurance to a building on ground not owned by the insured in fee simple," and that the interest of the insured at the time it was issued was "other than sole and unconditional ownership," and that the building insured stood upon ground that was not owned by it "in fee simple;" (3) That another provision in the policy said that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the subject of insurance be personal property and be or become incumbered by a chattel mortgage," and that the mortgages hereinbefore recited, and especially those to Bailey and the bank, were in violation of that provision and rendered the policies void, thereby destroying plaintiff's right of recovery thereon; and, (4) that the maker of the proofs of loss made false statements therein which avoided the policy under another of its conditions. A reply together with some amendments that did not change the issues and which were contro-

verted completed the pleadings, and upon trial before a jury it returned verdicts in favor of plaintiffs for the full amounts prayed for, less $60 that was withdrawn, and, defendants' motions for a new trial having been over-ruled, they prosecute these appeals from the judgments upon the verdicts.

Conceding defenses (1) and (4) as available, if true, it is sufficient to say that the testimony did not establish them, and we will not incumber this opinion with a further discussion of them, but will devote the remainder of it to the disposition of defenses (2) and (3), each of which, if true in a legal sense, would be sufficient to avoid the policies and destroy plaintiffs' right of recovery thereon.

Under defense (2) it is vigorously argued by learned counsel for defendants that the testimony conclusively shows that the insured, which was the corporation at the time the policies were issued, was not the unconditional owner of the property, nor did it own in fee-simple title the lot upon which the building and fixtures were located; and which, if true, would defeat plaintiff's right to recover any sum under the policies. It is admitted by plaintiff's counsel that the corporation at the time of the issuing of the policies was not the unconditional owner of the *legal* title to any of the property covered by the policies, nor did it own the legal title in fee simple. But it is vigorously insisted by him that the corporation at the time the policies were issued did own the *equitable* fee-simple title to the lot and to the insured improvements thereon, and that the relied on provisions in the policies are satisfied when the insured was the unconditional owner of the equitable fee-simple title; and which insistence we think is correct. The law relating to the question is thoroughly discussed in the text of 26 Corpus Juris, pp. 172, 173, secs. 209 and 210. In the first section the text says:

"The ownership of insured is sole and unconditional when no other person has any interest in the property as owner, and the quantity of the estate is not limited or affected by any condition. In other words, the interest of insured must be completely vested, and of such a nature that he alone will sustain the entire loss if the property is destroyed."

Part of the applicable portion of the text of section 210 says:

"If insured possesses the equitable title to the premises, the fact that the naked legal title is outstanding, which he has a right to compel to be transferred, will not amount to breach of a condition that he is the owner, that his interest is absolute, or that his title is not other than sole and unconditional owner."

In the case of Hartford Fire Insurance Co. v. McClain, 85 S. W. 699, 27 Ky. Law Rep. 461, the policy involved contained a similar provision to the one relied on here, and it was insisted that the interest of McClain, the plaintiff in that case in the property insured, was not one of "unconditional and sole ownership," but in denying that defense this court quoted from Joyce on Insurance, vol. 2, sec. 825, to the effect that:

"If one has a right which may be enforced against the property and which is so connected with it that its injury or destruction will necessarily damnify him, he has an insurable interest therein. And whoever has such title that if the property were lost without insurance the loss would fall on him has an insurable interest."

The opinion then proceeds to adjudge and determine that plaintiff, McClain, in that case, although not the legal title holder to the property insured, was vested with such equitable title thereto as to comply with the condition of the policy.

The principle so determined in that case was referred to with approval in the later cases of Germania Fire Insurance Co. v. Nickell & Webster, 178 Ky. 1, 198 S. W. 534; Ohio Valley Fire & Marine Insurance Company's Receiver v. Skaggs, 216 Ky. 535, 287 S. W. 696, and Home Insurance Co. v. McCoy, 218 Ky. 365, 291 S. W. 353. The latter case clearly distinguishes that of French v. Delaware Insurance Co., 167 Ky. 176, 180 S. W. 85, relied on by counsel for appellants. In the volume of Corpus Juris, supra, p. 174, sec. 212, it is stated that:

"A purchaser of real estate under a valid executory contract to purchase may properly represent himself as the owner of the property; and it is the

general rule that such purchaser is the sole and unconditional owner within the meaning of the policy.''

Cases from the federal courts and from 16 states of the Union are cited in support of that text, and which is the identical case we have here if the insured corporation in this case could, at the time of the issuing of the policies, demand and require the transfer to it of the legal title to insured property and to the lot on which it stood.

In the case of Curry v. Kentucky Western R. R. Co., 78 S. W. 435, 25 Ky. Law Rep. 1372, it was held, in substance, that a contract entered into by the promoters of a corporation to be organized inured to the benefit of the corporation as soon as it was formed so as to entitle it to enforce the provisions of the contract made for its benefit; just as in this case the obligation in the contract of August 4, 1925, wherein Bailey agreed to convey the lot upon which the mill was to be erected to the corporation upon its formation inured to the benefit of the corporation as soon as it came into existence. Likewise, did the obligations of both Russell and Bailey to convey their entire interest in the mill property to such corporation, inure to its benefit at the same time. It therefore could have enforced a transfer of the legal title to it by appropriate action at any time after it was formed, and under the cited law its title and ownership in and to the insured property, and to the lot upon which it stood, fulfilled the requirements of this condition of the policy; and for that reason defense (2) is not available in this case.

But, by an amended petition, plaintiffs set up the rider that was put on the policies which transferred them from the corporation to the individual ownership of Jackson Roller Mill, under which name Russell was operating after he became sole owner in the manner hereinbefore pointed out. The latter testified that he informed the agent of defendants at the time he applied for the change in the name of the insured of everything that had transpired, including his purchase of the entire stock, the deed executed to him by Bailey, and of his sole operation of the mill under the name of Jackson Roller Mill; and with that knowledge the rider was put upon the policies, and which facts were pleaded as an estoppel against defendants' right to rely upon this defense. The uncontradicted evidence sustains the allegations of the amended petition. The agent of defendants testified in the case

and he was not inquired of, nor did he attempt to deny the testimony of Russell, wherein he stated that he communicated all the facts to the agent before the rider was issued or attached to the policies.   We think it is fundamental that on and after the attachment of the rider the insurance became payable not to the corporation, but to whomsoever owned and operated the Jackson Roller Mill which was the name of the insured contained in the rider, and the facts conclusively show that such person was Russell and that he at that time had acquired the title to the property both equitable and legal, and which is an additional reason disentitling defendants' right to rely upon this condition of the policies.

Under defense (3) it is insisted that the mortgages to Bailey and to the bank, given by Russell after the issuing of the policies and after he became the owner of the property, vitiated the policies under the condition relied on in that defense, and the case of Niagara Fire Insurance Co. of New York v. Mullins, 218 Ky. 473, 291 S. W. 760 (which was followed by the later one of Niagara Fire Insurance Co. of New York v. Hankins, 220 Ky. 234, 294 S. W. 1070), is cited in support thereof.   Under the doctrine of those cases this defense would be complete if the mortgages covered any of the property against which incumbrances were forbidden by the relied on condition of the policies.   Such condition in this case provided for an avoidance of the policy only "if the subject of insurance be *personal* property and be or become incumbered by a chattel mortgage."   (Our emphasis.)   The policy contained no provision against a mortgage incumbrance of any *real* property that was covered by the insurance. Neither the mortgage to the bank, nor the one to Bailey, covered any personal property.   They did include the lot, building, and machinery, the latter of which, as we have hereinbefore pointed out, became fixtures when they were attached to the realty, and which the proof shows was done in such a manner as to convert them into realty. See Davis v. Eastham, 81 Ky. 116, and title "Fixtures" in volume 2 of Caldwell's Judicial Dictionary.   If, however, we were less confident of the conversion of the machinery and apparatus used in the mill from chattels to realty by their being attached to and becoming a part of the mill structure, we would still be inclined to so construe the policies, under the familiar rule that in cases of doubt the insured should be favored over the insurer

upon the ground that the language of the policy was that employed by the latter. The mortgages therefore not covering any property that was forbidden to be incumbered by the condition under consideration, this defense cannot be sustained.

It is insisted that the court erroneously instructed the jury, but under the conclusions hereinbefore expressed a peremptory instruction in favor of plaintiffs would have been proper, and, that being true it becomes unnecessary to discuss this alleged error.

Upon the whole case we find no error prejudicial to the substantial rights of defendants, and the judgment in each case is affirmed.