## Thomas v. Western Assur. Co.

(Decided Jan. 21, 1938.)

**614**

EDWARD C. O'REAR and ALLEN PREWITT for appellant.

MARSHALL A. DAWSON and WOODWARD, DAWSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant, Frank Thomas, brought this suit in the Woodford circuit court to recover of appellee the sum of $1,000, on a fire insurance policy.

In his original petition, plaintiff pleaded the insurance contract, the destruction of the house by fire, demand of payment, and refusal of appellee to pay. By amended petition, he alleged that the land on which the building stood was owned in fee simple jointly, and as tenants in common by plaintiff, his father, Elijah Thomas, and his brothers, Charles Thomas, John Thomas, and Jeff Thomas; by parol agreement between said joint owners it was agreed by them that plaintiff might build a house on one corner of said property (which consisted of about 8 acres, situated on the Tyrone Pike about 1 mile from the town of Versailles, Ky.) at his own cost and that in any subsequent partition of said property between the said joint owners, the plaintiff was to be allotted that part of the land on which his house and improvements might be built; that in pursuance of said agreement he took posssession of a part of the land, and did at his expense and cost erect a dwelling house thereon at a cost of approximately $3,000, and resided therein, claiming it as his own at the time of the issuance of said policy and at the time of the destruction of said house by fire; that said house

was at the time it was burned of the fair value of exceeding $1,000. He made the other joint owners parties defendants and called on them to controvert plaintiff's title or to be barred thereof. Plaintiff also made the Title Insurance & Trust Company a party defendant, alleging that after plaintiff had erected the building under the circumstances and agreement stated above, the Title Insurance & Trust Company in virtue of a clause of the policy which gave to the said Title Insurance & Trust Company the power and right to effect insurance in the owner's behalf, and for its further security on all buildings and structures on said entire tract of land, caused to be issued a certain policy set up and sued on in an action in the Woodford circuit court, styled, Elijah Thomas v. Royal Exchange Assurance, etc., and caused said Elijah Thomas to pay the premium thereon, which he did pay; that there was a balance owing on said mortgage debt by Elijah Thomas to said Title Insurance & Trust Company of not in excess of $1,500 at the time of said fire loss, and that although the loan of said Title Insurance & Trust Company to Elijah Thomas appears to be in the name of said Elijah Thomas alone, it, in fact, was for and on behalf of his sons, this plaintiff, Charlie, John, and Jeff Thomas; that the Western Assurance Company (appellee) knew of all of said facts when it issued to Elijah Thomas the policy in his name and sued on by him; that the insurance effected in the name of Elijah Thomas was an insurance to and on behalf of all the owners of said land, who were also bound to pay said mortgage debt; that the policy of insurance in so far as it may apply to this plaintiff's building issued to and in the name of said Elijah Thomas was not done with the knowledge of this plaintiff, and he did not know of same until after the fire loss; that the policy was procured and caused to be issued at the instance of said Title Insurance & Trust Company as mortgagee, under a clause of said mortgage which provides that all buildings on or erected on said mortgaged premises should be insured against fire loss by the mortgagor during the existence of said mortgaged debt, but if he failed to maintain the insurance on such building, the mortgagee might buy a policy of insurance for him and in his name, with a clause thereof making any loss thereunder payable to the mortgagee

as its interest might appear; that Elijah Thomas did not apply for or direct said $1,500 policy to issue on said house built by this plaintiff, but said Title Insurance & Trust Company did, in virtue of its said power and authority, cause said Elijah Thomas to pay the premium thereon. He further alleged that the said $1,500 was a valid policy of insurance upon said building for the protection primarily of the mortgagee, Title Insurance & Trust Company, and then of the other joint tenants, if upon partition of said land this plaintiff should be entitled to so much thereof as was occupied by said house. He further averred that his own policy, the one sued on herein, was procured in good faith to protect his individual ownership of said house, as upon partition he would be entitled to and obligated to accept same in his portion without respect to the enhancement in value thereof by the erection of said building. Plaintiff further alleged that his father, Elijah Thomas, is an unlettered man, and his sons, including plaintiff, are negroes of very limited education, inexperienced in business titles and law, and without intent or thought of deceiving any one they left it all to the other contracting parties to prepare and execute such papers in the premises as would protect both the lenders and insurers and the plaintiff and his brothers and father, all of which was at the time known by the defendant, insurance companies, and trust company.

By the prayer of the amended petition, plaintiff asked that the Title Insurance & Trust Company, Elijah Thomas, Charlie Thomas, and Jeff Thomas be made party defendants; that plaintiff be adjudged to recover the sum of $1,000 on the policy sued on; that the said Title Insurance & Trust Company set up its claim, if any it has herein; and that his title to said insurance fund be granted as against all the defendants.

The defendants Elijah Thomas, Charles Thomas, and Jeff Thomas filed their joint answer, in which they admitted that the statements of plaintiff's amended petition were true; but they offered no defense whatever to plaintiff's claim to his alleged portion of the land or the insurance fund in controversy.

The defendant Western Assurance Company, appellee herein, filed its separate answer controverting

the allegations of the petition as amended, and further pleaded affirmatively, among other things provided for in the policy sued on, that it was provided that "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership," and that the plaintiff, Frank Thomas, was not the sole and unconditional owner of the property insured at the time the policy was written, nor at the time the loss by fire occurred.

By amended answer it further pleaded another clause in the policy, which provided that, "This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance whether valid or not," and further pleaded affirmatively that the whole insurance on the property described in the policy sued on amounted to $2,500 and that its liability in no case is more than 10/25 of $1,000 (the amount of plaintiff's policy), and pleaded and relied upon that provision of the policy in bar of plaintiff's right to recover more than $400 on the policy sued on.

The Title Insurance & Trust Company was duly summoned but filed no answer, and the allegations of plaintiff's petition and petition as amended stand admitted as to the Title Insurance & Trust Company.

The evidence of appellant and his father, Elijah Thomas, was taken in behalf of appellant, and the evidence of Mrs. Ethelyn Watts, the insurance agent who issued the policy in question, was taken in behalf of the appellee.

Appellant testified that he built the house which was burned at his own cost of about $3,000 or $3,500 and that he built the house after it was agreed between his father, brothers, and himself that the portion of the land on which he built the house would be allotted to him when it was divided. He testified that the tract of land was about 1 mile from the town of Versailles and that there were a good many houses and a subdivision of town lots in that neighborhood, and that the land could be divided into town lots for building purposes and was worth more as town lots than for farm-

ing purposes. He further said that at the time he took out the insurance he did not know of the insurance which had been taken out by the Title Insurance & Trust Company on the same house, and the first he knew of it was when the adjuster came after the fire occurred. He said he did not read the mortgage referred to in the pleadings authorizing the Title Insurance & Trust Company to take out insurance on the property, and all he understood was that it was a mortgage upon the property, and he knew nothing of the provision in the mortgage authorizing any insurance or that any had been issued under the provisions of the mortgage; that at the time he took out the insurance he thought that it was for his benefit, regardless of any other insurance. He said that when he was negotiating with Mrs. Watts for the insurance she asked him whether he had borrowed money to build the house or anything against the house, and he told her that the house was paid for and that he owed nothing on it. He further testified that after the fire he was negotiating with Mrs. Watts and one Mr. Harrison for a settlement of the insurance, and they refused to pay the insurance upon the ground that the house was in two names, Elijah Thomas and Frank Thomas, and that no two people can draw insurance on the same house, but in that conversation they made no claim that there was any joint ownership of the property.

Briefly stated, the evidence of appellant tends to sustain all the facts pleaded in his petition and petition as amended, and his evidence is uncontradicted, except slightly so by the evidence of Mrs. Watts, which we will later consider.

Elijah Thomas testified that he was present and heard the conversation between appellant, Mrs. Watts, and Mr. Harrison relating to the adjustment of the insurance after the fire, and Mr. Harrison asked appellant if he told Mrs. Watts that he and his father and brothers owned the house jointly, and appellant said he told her that all four of them owned the "place." He said that Mr. Harrison told appellant that they could not pay the two policies because they were on the same house, but he made no claim of joint ownership.

Mrs. Ethelyn Watts, testifying for appellee, said

that when she issued the policy in question on the house appellant told her that he owned it, but said nothing about any joint ownership, and she knew nothing about such joint ownership until after the fire.

By agreement of parties, a jury was waived and the case was submitted to the chancellor for his findings of facts and law, and upon consideration of the case the chancellor made the following finding of facts:

"At the time of the issuance of the policy sued on herein, Elijah Thomas and his sons, the plaintiff, Frank Thomas, Charles Thomas and Jeff Thomas, were the owners in fee as common or joint tenants of a tract of land in this County on the Tyrone Pike containing approximately eight (8) acres; however, prior to the issuance of said policy said owners had agreed among themselves that if the plaintiff Frank Thomas would build a dwelling house on one corner of said tract, at his own expense, that in the division of said property, he would be allotted a portion so as to include said house; that said agreement was in parol; that Frank Thomas did build said house at his own expense, and that said house is the subject of said policy; that he fenced the lot about it, containing approximately one quarter (¼) of an acre, and claimed the same as his own exclusively under the contract with his father and brothers, the building having been done with their full knowledge and consent, as above set out."

The chancellor also found as a matter of law that appellant's interest in the property did not satisfy the provisions of the policy that it should be void "if the interest of the insured be other than unconditional and sole ownership," and dismissed appellant's petition. He appeals.

The question to be determined is whether appellant was the sole owner of the house in contemplation of the purposes of the policy in question.

It is established by the pleadings and proof that pursuant to an oral agreement with the joint owners of the land, appellant built the house at his own cost, and that in the division of the land that part on which the house was built would be partitioned to appellant.

Appellee concedes the rule that where one of several joint tenants by contract with the others erects improvements upon a part of the property, that part will be set apart to him in a division of the land, and if the land is not divisible, he is entitled to the whole of the value of his improvements. But it is insisted that this rule does not establish that such joint tenant is the sole and unconditional owner of the property on which his improvements are located. This argument is based upon the fact that appellant had only an oral agreement with the other joint owners to erect the house on the property and that that part would be allotted to him in the division of the property. It must be conceded that under our statute of frauds, Ky. Stats., sec. 470, an oral agreement for the sale of real estate does not transfer or vest any title. But the question here involved should not be determined upon a concrete statement of the law—that oral agreements for the sale of real estate are void, without regard to other basic facts and principles involved. In determining whether appellant is entitled to recover on his insurance policy, all the facts and circumstances as they may relate to the other joint owners must be taken into consideration.

Appellant's father and brothers are the only ones who could be considered joint owners or adverse claimants to any part of the property, including the proceeds of the policy. In addition to the rule stated above, viz., that in a division of the property the other joint owners would be estopped to claim the land on which the house in question was built, or claim the house or any parts of the proceeds of the policy, we have in this case the additional fact, as is disclosed by the pleadings, that the other joint owners were made party defendants and called upon to assert whatever interest they may claim or have in or to the property including the land, the house, or the proceeds of the insurance policy, and they failed to assert any claim or right in or to any of the property, but, on the contrary, they filed their answer admitting the truth of the allegations of plaintiff's petition as amended—that he was the sole owner of the house, the thing insured, and entitled to all the proceeds of the policy.

Appellee relies upon, among other cases, the case of Ohio Valley Fire & Marine Insurance Company v.

Skaggs, 216 Ky. 535, 287 S. W. 969. In that case Gertrude Skaggs, the insured's wife, and her mother purchased certain real estate and entered into a written contract with Skaggs by which they agreed that if he would put a certain sum of money into the enterprise, the store building and everything connected with the business should be his. He took out a policy of $1,000 on the building and $5,000 on the contents and upon the destruction of the property by fire he instituted suit to recover on his policies. The company defended upon the ground that he was not the "sole and unconditional" owner of the property. The lower court directed a verdict against the insurance company, but on appeal the judgment was reversed on the ground that Skaggs was not the unconditional and sole owner of the property, because he did not have any title which the law would recognize and enforce against adverse claimants. The distinction between that case and the present one is at once apparent. In the present case as pointed out above, appellant has a claim on the property in question which the law would recognize and enforce as against the other joint owners, and therefore it is not material that he was not presently invested with an absolute fee simple title to that portion of the land on which the house was built.

Appellee also relies on the case of Dixie Fire Insurance Company v. Greer, 233 Ky. 334, 25 S. W. (2d) 743. In that case Greer moved into and took possession of certain property under a parol agreement with his father-in-law that he would deed the property to Greer's wife. Greer had no insurable interest whatever in the property, no contract or other enforceable claim or potential right to the property himself, and the case was decided solely upon that theory. The cases of National Union Fire Insurance Company v. Hall, 233 Ky. 337, 25 S. W. (2d) 738; Citizens' Insurance Company of New Jersey v. Railey, 256 Ky. 838, 77 S. W. (2d) 420; Scottish Union & National Insurance Company v. Mundy, 253 Ky. 44, 68 S. W. (2d) 748, 749, are also relied on by appellee.

In the Hall Case, Hall's deed to the property insured was void and it is held that under the sole and unconditional ownership clause in the policy she could not recover on the insurance because she had no title

whatever to the property, nor did she have any enforceable contract or any contract on the basis of which she could have reformed the deed. In other words, she had not as much as a potential title which she could enforce. In the case at bar, appellant had an insurable interest in the property and a potential right or claim of title as against the other joint owners.

In the Railey Case, supra, one joint owner insured the whole of the property of which he owned only one-third interest and attempted to bring the other joint tenants in as beneficiaries under the policy on the ground that the policy was taken out for them also, but by mistake their names were omitted.

However, in the course of the trial, that claim was withdrawn and the case was determined on the question of insurable interest of one joint tenant who had bought the policy. It was admitted on the appeal that he was not the sole and unconditional owner of the property but relied on the fact that he merely had an insurable interest in the property and that in the absence of fraud the policy is not void because the insured had not the sole title. There was no claim of a potential title or other claim which he could enforce as against the other joint owners. It was held that the provisions of the policy were not satisfied by the mere fact that appellee had "an insurable interest."

In the Mundy Case, supra, Mundy claimed that he bought a lot of his mother in the year 1902 and that his mother told him that if he would pay for one-half of the lot she would deed it to him; that he paid his mother the price asked by her and she then deeded the lot to him. He further stated that he never did see the deed but that his mother told him that she had it "fixed up." His mother was then deceased and, of course, he could not testify as to transactions and conversations had with his mother, and the case was not determined upon his claim that he had a deed to the land on which the house was built. We said:

> "Aside from any transactions with or statements of his mother, he stated that he had been in possession of the property, claimed and used it as his own since the year 1902 and built the house thereon in the year 1905 at a cost of $2,350, all of

which sum was paid by him, and that he had lived in and occupied his house, together with the soil on which it stood, continuously since that time; that he had listed it with the assessor for taxes in his own name and had paid the taxes thereon not only since he built the house in 1905 but since the year 1902, the time he took possession of the lot.''

It was held that according to the undisputed evidence of Mundy he had held and used the property as his own a sufficient time to acquire title by adverse possession and for that reason he was entitled to recover on his insurance policy. It is true that it had not been judicially determined that Mundy was the owner of the property by adverse possession, but, like appellant in the present case, his evidence manifested that he had a potential title or claim which he could enforce as against the alleged adverse joint owner, his mother, brothers, and sisters.

In Kenton Insurance Company v. Wigginton, 89 Ky. 330, 12 S. W. 668, 669, 11 Ky. Law Rep. 539, 7 L. R. A. 81, the question there involved and determined is in point with the issue involved in the present case. Wigginton owned an undivided one-fourth in fee of a tract of 224 acres of land in Carroll county and a life estate in the balance. He improved an old worthless house on the land by practically rebuilding it at a cost to himself of $2,000. Believing that he owned the whole tract in fee, he procured an insurance policy on the house which was subsequently destroyed by fire and payment of the policy was refused upon the ground that Wigginton was not the owner in fee of the property. The policy contained the stipulation that he was the owner in fee of the property. It is disclosed in that opinion that some question was raised in regard to the knowledge of Wigginton's title, by a subagent, and it is insisted that in brief of appellee in the present case, that a recovery was allowed in the Wigginton Case because of the knowledge of the subagent of Wigginton's title. However, it is clearly pointed out in the opinion that the case was not determined on that point. It is said:

"But, the company ignoring the authority of Gullion, the case must be determined on the ma-

teriality of the representation made as to the title, and its effect on the company. So we find the appellee the owner of one-fourth of the entire land in fee, and a life-estate in the balance, living on the land, and in a building erected out of his own means, and necessary, and we might say indispensable, as a habitation for himself and family. He is a tenant in common of the whole tract, and the dwelling insured (built at his own expense, or remodeled) was an old one that was valueless, that cost him $2,000. It is not pretended that the land cannot be divided so as to include the improvement made by the appellee, and allot to him that portion of the land where he has lived since the year 1864. He was the owner in fee of the one-fourth interest, and in good faith believed that he held the fee to the whole tract, but this court held otherwise in the case of Peak v. Wigginton, 11 S. W. 89 [10 Ky. Law Rep. 922], decided at the last term. It is manifest that in a division of this land the building would have been assigned to the appellee without estimating its value. The old building was worthless, and the entire expense incurred by the appellee in remodeling it, and the fact that the title is not purely legal, is no argument against this recovery. There was no incumbrance on this one-fourth interest, or litigation in regard to it; and, the tenant in common having the right to improve the land, and to erect such buildings as would enable him to live on it, if the other tenants get their part of the land in its unimproved state, without regard to the improvements made by their cotenant, no one will be heard to complain. The improvements in such a case, as was held in Nelson's Heirs v. Clay's Heirs, 7 J. J. Marsh. [138], 139, [140], [23 Am. Dec. 387], 'will be assigned in the partition to the tenant making them.'

"It certainly would constitute no defense on the part of the appellant if, instead of a conveyance of record, the appellee had only a bond for title, with all the purchase money paid. The representation as to the title to the entire tract was not fraudulent, but made in the best of faith; nor was it material to the risk, because the appellee

was entitled to his one-fourth interest in fee, including the dwelling insured. The appellee was the unconditional owner of this dwelling, and the ground upon which it stood, free of any incumbrance; and the fact that he did not own the entire tract, although he may have so stated, could in no manner have affected the rights of the insurance company, or misled its agent when taking the risk; and no court, it seems to us, should hold that the fee was not in the appellee for the reason that partition had not been made.''

To the same effect, see Globe & Rutgers, Fire Insurance Company v. Frankfort Distillery, 226 Ky. 706, 11 S. W. (2d) 968.

It may be noted that in the Wigginton Case the representation as to ownership of the property related to whether Wigginton was the owner in fee of the property, while in the present case the language of the policy is "sole and unconditional" owner of the property. But very obviously the words "in fee" and "sole and unconditional," owner will be given the same meaning and effect. In speaking of the meaning of these terms (in Wigginton Case), the court said:

"It appears from the application made by the appellee that the building insured stood on a tract of land containing 224 acres, and, in the answer propounded to a question as to the title, he stated that he was the fee-simple owner, or rather the unconditional owner, of the entire tract. Whether any difference exists in a case like this in the meaning of the words 'the owner in fee' and 'the unconditional owner' is not necessary to determine; and, in considering the question of title, the case will be disposed of as if the appellee had represented to the agent that he was the owner in fee of the entire tract of land. He in fact owned but one-fourth of the whole tract in fee, with a life-estate in remainder, but was then claiming a fee in the whole; the sole question being involved in a litigation, then pending, as to the extent of his interest in the remainder, he claiming a fee, and the children of his wife by her first husband insisting that he had a life-estate only."

See, also, London Assurance Corp. v. Bailey, 222 Ky. 757, 2 S. W. (2d) 397.

It appears that the Wigginton and Mundy Cases are based upon the principle that the insured in those cases owned an insurable interest in the property insured and had a potential title or claim to the land on which the houses were built, which they could enforce as against other joint owners. We think the present case comes within the same category and appellant was invested with such title or ownership of the property as to entitle him to recover on his policy.

We now come to a consideration of the question of whether appellant is entitled to recover the face of his policy, $1,000, or only 10/25 or $400 thereof, because of the other insurance on the whole property obtained by the Title Insurance & Trust Company pursuant to its mortgage as set out in the amended petition, and the amended answer of appellee.

Appellee relies on Sun Insurance Office v. Varble, 103 Ky. 758, 46 S. W. 486, 20 Ky. Law Rep. 556, 41 L. R. A. 792, as authority to support its position. In that case there were several policies taken upon the property involved and issued to different persons according to their respective interests, etc. It was providied in the several policies procured by Varble that,

"In case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein."

The building was only partially destroyed and a controversy arose between the various insurance companies as to their respective liabilities under the various policies.

The provision of the policy relied on by appellee in the present case does not specifically mention any other insurance on the property insured, as did the policy involved in the Varble Case. The decisive question in the present case is, what is meant by the words "whole insurance"? That is, the whole of appellant's

policy, $1,000, or additional and other insurance so as to include the additional $1,500 under the mortgage referred to, making a total of $2,500. If it was not intended to include the additional insurance, there is only one alternative, and that is, it was intended to take care of the situation in the event of a partial loss; but the building being completely destroyed resulting in a total loss, appellant would be entitled to the face value of his policy under the valued policy statute, section 762a-22, Kentucky Statutes. It is our view, however, that that clause of the policy was intended to apply to other insurance on the property.

Counsel for appellee in his brief quotes that clause of the policy, and follows the quotation with this language:

"* * * that the whole insurance was $2,500.00 and appellee's liability in no case is more than ten twenty-fifths of $1,000.00, or $400.00."

Appellee stated in its answer, and so admits in its brief, that the whole insurance was $2,500, yet, as a basis of settlement it endeavors to treat the "whole insurance" as $1,000, thereby limiting it to appellant's policy only. In view of the language of the policy and the admission of appellee that the whole insurance was $2,500, it follows that appellant is entitled to recover 10/25 of $2,500, not 10/25 of $1,000. It follows that appellant is entitled to 10/25 of $2,500, which is $1,000, the face of the policy.

It is shown by the undisputed evidence of appellant that his building was worth $3,000 or $3,500, and there is no contention here that the building was not worth $2,500—the amount of the whole insurance.

Our conclusion is, therefore, that appellant is entitled to recover of appellee the face value of his policy and that the chancellor erred in dismissing his petition and denying him a recovery thereon.

Judgment reversed.

Whole court sitting.